**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HERBERT BOYNTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 2:26-CV-02252 |
| | : | |
| CABLEVISION LIGHTPATH, LLC., | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S PARTIAL
<u>MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION                                                                    1

II.     PLAINTIFF'S ALLEGATIONS                                                         1

        A.      Inadequate Claims of Hostile Work Environment and Retaliation           1

        B.      Inadequate Claims of Fraud                                              2

III.    STANDARD FOR A MOTION TO DISMISS                                               3

IV.     LEGAL REASONING                                                                4

        A.      Count III Fails to State a Claim for Hostile Work Environment           4

                i.      *Boynton fails to satisfy the "because of" requirement*         4

                ii.     *Boynton was not subjected to inferior terms, conditions, or privileges of employment*                                                                5

        B.      Count II Fails to State a Claim for Retaliation                         7

        C.      Count IV Fails to State a Claim for Fraud                               9

V.      CONCLUSION                                                                      11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albert Apartment Corp. v. Corbo Co.*,
  182 A.D.2d 501 (N.Y. App. Div.
1992)………………………..……………..……..……10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)……………………………..…………………………….………3,
4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)……………………………………………………...……3,
4

*Bilitch v. N.Y.C. Health & Hosps. Corp.*,
  194 A.D.3d 999, 1003 (N.Y. App. Div.
2021)……………………………………………..4

*Boonmalert v. City of N.Y.*,
  721 F. App'x 29, (2d Cir. 2018)…………..………………………….…………5

*Bramex Assocs., Inc. v. CBI Agencies, Ltd.*,
  149 A.D.2d 383, 384 (N.Y. App. Div.
1989)…………………………….……..……….9

*Burgess v. Mta Constr. & Dev. Co.*,
  2026 N.Y. Misc. LEXIS 1430 (N.Y. Sup. Ct. 2026)……………….……………………5

*Carr v. WestLB Admin., Inc.*,
  171 F. Supp. 2d 302, 309-310 (S.D.N.Y. 2001)……………………………………8

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir.
2002)……………………………………………………3

*Chan v. Havemeyer Holdings LLC*,
  223 A.D.3d 403 (N.Y. App. Div.
2024)…………………………………..………..……..10

*Herskowitz v. State of N.Y.*,
  222 A.D.3d 587, 588 (N.Y. App. Div.
2023)………………………………..………..7

2

*Keceli v. Yonkers Racing Corp.*,
  155 A.D.3d 1014, 1016 (N.Y. App. Div.
2017)…………………………………………………7

*Khalil v. State of N.Y.*,
  847 N.Y.S.2d 390, 396 (N.Y. Sup. Ct. 2007)…………..………………………………………..6

*Laduzinski v. Alvarez & Marsal Taxand LLC*,
  132 A.D.3d 164, 167-168 (N.Y. App. Div. 2015)……………………………….…………..10

*Lafaro v. N.Y. Cardiothoracic Grp., PLLC*,
  570 F.3d 471, 475 (2d Cir.
2009)……………………………………………………1

*La-Marca Pagano v. Dr. Steven Phillips, P.C.*,
  129 A.D.3d 918, 921 (N.Y. App. Div.
2015)……………………………………….………8

*Magadia v. Napolitano*,
  2009 U.S. Dist. LEXIS 30926 (S.D.N.Y. Feb. 26, 2009)………………………………….6, 7

*Mejia v. Roosevelt Island Med. Assocs.*,
  927 N.Y.S.2d 817 (N.Y. Sup. Ct. 2011)……………………………………………………6

*Miller v. Wolpoff & Abramson, L.L.P.*,
  321 F.3d 292, 300 (2d Cir.
2003)……………………….……………………………………………..1

*Pacnet Network v. KDDI Corp.*,
  901 N.Y.S.2d 908 (N.Y. Sup. Ct. 2009)……………………………………………...……….…10

*Reed v. A.W. Lawrence & Co.*,
  95 F.3d 1170, 1178 (2d Cir. 1996)…………………………………………………………7

*Riverbay Corp. v. Thyssenkrupp N. El. Corp.*,
  116 A.D.3d 487, 488 (N.Y. App. Div.
2014)………………………………...……………11

*Salazar v. Bowne Realty Assocs., L.L.C.*,
  796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011)………...……………………………………7

*Shapiro v. State of N.Y.*,
  217 A.D.3d 700, 701 (N.Y. App. Div.
2023)……………………………………………7

3

*Smalley v. Dreyfus Corp.*,
  10 N.Y.3d 55, 58 (N.Y. 2008)……….…..……….…..……………..…….……..…..10

*State Div. of Hum. Rts. v. Comm'r of N.Y. State Dep't of Civ. Serv.*,
  57 A.D.2d 699, 700 (N.Y. App. Div.
1977)…………………...………………………………….2

**Statutes**

N.Y. Exec. Law § 296(1)(h)………………………………………………………….4

N.Y. Exec Law § 297(9)……………………………………………………………..2

**Rules**

Fed. R. Civ. P.

12(b)(6)………………………………………………………...3

N.Y. CLS CPLR R 3016(b)…………………………………………………10, 11

4

## I.    INTRODUCTION

Defendant, Cablevision Lightpath, LLC ("Lightpath" or "Defendant"), moves this Court to dismiss Counts II, III, and IV of the *Complaint* filed by Plaintiff Herbert Boynton ("Boynton" or "Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    PLAINTIFF'S ALLEGATIONS[1]

### A. Inadequate Claims of Hostile Work Environment and Retaliation

Lightpath hired Boynton (then age 61) in April 2021 as a Senior Vice President. *Complaint* at    11.  Over the next several years, Lightpath promoted Boynton to Executive Vice President of Operations and then to Executive Vice President of Sales.  *Id.* at ¶¶ 11, 17.  In January 2025, Lightpath hired Joseph Harding ("Harding") as the new President of Lightpath. *Id.* at    40.  On August 21, 2025, Lightpath terminated Boynton's employment.  *Id.* at ¶¶ 30, 66. Boynton was 65 years old when his employment ended.

---

[1] When reviewing a motion to dismiss, the Court accepts as true all factual allegations pleaded in the plaintiff's complaint and gives plaintiff the benefit of every favorable inference.  *Lafaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  Although Lightpath disputes Boynton's claims, those disputes are irrelevant for this motion.

In the *Complaint*, Boynton argues that Harding engaged in constant sexual harassment (not of him, but purportedly of others). *Id.* at   43.  Boynton alleges that Harding created a sexually harassing, hostile work environment to which Boynton objected and in which he refused to participate. *Id.* at   42.  However, during the seven months their employment overlapped, Harding never had a one-on-one meeting with Boynton. *Id.* at   41.  Harding purportedly made harassing comments to both women and men. *Id.* at   43.  Boynton does not allege that he was present when Harding made any of these comments.  Harding also asked for pictures of employees' wives, including Boynton's.[2] *Id.*  Boynton alleges that he was uncomfortable with Harding's comments and refused to laugh or participate in this behavior. *Id.* at   45.

Boynton claims that his subordinates complained to him about Harding creating a hostile work environment. *Id.* at   45.  However, Boynton identifies neither the subordinates who complained nor when they complained.  In Spring 2025, Boynton alleges generically that he reported to Doug Turtz ("Turtz"), Chief Revenue Officer, that Harding was creating a hostile work environment due to his sexist and misogynistic comments. *Id.* at   46.  Turtz said he would talk to Chris Morley ("Morley"), Chief Executive Officer, about Boynton's complaints. *Id.* at 46.  Boynton alleges that Lightpath failed to take prompt and effective remedial action and did not investigate Boynton's claims about a hostile work environment. *Id.* at   59.  Boynton failed to allege whether Turtz actually spoke to Morley, whether Boynton followed up with Turtz, or that Boynton took his concerns to anyone in Human Resources.  In August 2025, at a sales meeting, Boynton alleges that Harding told attendees that he planned to "manage some people

---

[2] This allegation was absent from Boynton's Charge of Discrimination and is barred because Boynton failed to exhaust his administrative remedies as to it.  While N.Y. Exec Law § 297(9) provides that an aggrieved individual has the choice of instituting either judicial or administrative proceedings, Boynton elected to have his EEOC Charge of Discrimination co-filed with the "State or local Agency."  As such, he was required to exhaust his administrative remedies as to all claims. *See generally, State Div. of Hum. Rts. v. Comm'r of N.Y. State Dep't of Civ. Serv.*, 57 A.D.2d 699, 700 (N.Y. App. Div. 1977).

out of the business" while sitting on the other side of the table from Boynton. *Id.* at ¶¶ 47-48. Boynton alleges that Harding also walked out of the meeting in the middle of Boynton's presentation, speculating that Harding was unhappy that Boynton would not participate in his harassing behavior and because Boynton complained about his creation of a hostile work environment. *Id.* at   46.

**B.  Inadequate Claims of Fraud**

Boynton further alleges that, in August 2023, Morley gave most of Boynton's job duties to Massimo Cardarelli ("Cardarelli") so that Tim Haverkate ("Haverkate") could move up in the company. *Complaint* at ¶¶ 24, 64.  In exchange for Boynton moving aside for Cardarelli and Haverkate, Boynton alleges that Morley promised to give Boynton a "job for life" and gave him 9,750 A-1 preferred shares. *Id.* at ¶¶ 24, 64.  Boynton claims that, despite his promises, Morley reduced Boynton's compensation over the next two years. *Id.* at   25, 65.  Two years later, on August 21, 2025, Boynton alleges that Morley fired him to prevent the continued vesting of the preferred shares. *Id.* at   66.  At the time of the termination, Morley allegedly told Boynton that he "did a great job…had been a major part of the business and performed well." *Id.* at   67. Boynton argues that, nevertheless, Morley also told Boynton that his unvested shares would be forfeited. *Id.* at   67.

**III.        STANDARD FOR A MOTION TO DISMISS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, the Court confines its review to the "four corners" of the complaint, including the facts alleged in the complaint, documents attached to the complaint, or documents incorporated by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

3

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). "The plausibility determination is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 679. Because Counts II, III, and IV of Boynton's *Complaint* fail to meet the requisite pleading hurdles, the Court should grant Lightpath's motion to dismiss.

## IV.    LEGAL REASONING

### A. Count III Fails to State a Claim for Hostile Work Environment

Boynton fails to state a claim for hostile work environment pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 296(1)(h) ("NYSHRL"). Pursuant to the NYSHRL, an employer is liable for a hostile work environment only when an employee is subjected to "inferior terms, conditions, or privileges of employment ***because of*** the individual's membership in one or more…protected categories." *See* N.Y. Exec. Law § 296(1)(h) (emphasis added). "A court must consider all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with the plaintiff's work performance." *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 194 A.D.3d 999, 1003 (N.Y. App. Div. 2021).

### *i.    Boynton fails to satisfy the "because of" requirement*

Boynton fails to plead both that he was subject to "inferior terms, conditions, or privileges of employment" and that he was subjected to such ill treatment *because of* a protected characteristic.  While he raises a separate age discrimination claim, Boynton's hostile work environment claim is unrelated to his age; rather, as he describes it, it is related to alleged sexist or misogynistic comments made in the workplace.  *See Complaint*, ¶43.  Even accepting for purposes of this Motion that Boynton's status as a man somehow constitutes a protected characteristic, Boynton does not allege that Harding subjected Boynton to the referenced comments *because of* that status.  Rather, in the *Complaint*, Boynton indicates that Harding made the comments to both women and men.  *Id.* at   43.  The comments also were general in nature and Boynton does not allege that Harding specifically targeted him when making them. *See Boonmalert v. City of N.Y.*, 721 F. App'x 29 (2d Cir. 2018) (affirming motion to dismiss a hostile work environment claim because plaintiff did not allege that his protected characteristic was the motivating factor behind any workplace hostility).  Boynton does not allege that he was even present when the majority of the comments were made and failed to allege that any protected characteristic motivated the alleged workplace hostility.

Compare Boynton's allegations to the factual predicate in *Burgess v. Mta. Constr. & Dev. Co.*, 2026 N.Y. Misc. LEXIS 1430 (N.Y. Sup. Ct. 2026).  In *Burgess*, the plaintiff alleged hostile work environment after a female coworker interrogated him on an almost daily basis about his sexual orientation, race, and medical condition.  The court concluded that the alleged persistent personal inquiries targeted at the plaintiff went beyond normal workplace interactions and supported the existence of a hostile work environment.  For those reasons, the court denied defendant's motion to dismiss the hostile work environment claim.  *See Burgess v. Mta Constr. & Dev. Co.*, 2026 N.Y. Misc. LEXIS at *8-9.  Here, the only comment that Boynton alleges

5

Harding made specifically to him was a request for a picture of his wife, an allegation he failed to raise in either his Charge of Discrimination or at any time between his termination and the filing of his *Complaint*. However, this comment cannot satisfy the elements of a hostile work environment claim because standing alone, it is an innocuous request and it was not unique to Boynton as Harding purportedly asked other employees for pictures. Moreover, Boynton does not allege that Harding asked him for a photograph more than once or that the request was anything other than a normal workplace interaction.

### ii. *Boynton was not subjected to inferior terms, conditions, or privileges of employment*

Boynton also fails to plead that he was subject to inferior terms, conditions, or privileges of employment. Boynton alleges that he was demoted and his pay was reduced, but both the demotion and the pay reduction occurred between one and two years before Harding joined Lightpath, breaking any causal connection to his complaints regarding Harding. *Complaint* at ¶¶ 24-25. Boynton points to the August 2025 sales meeting during which, according to Boynton, Harding told attendees that he planned to "manage some people out of business" while sitting across the table from Boynton. *Id*. at 48. However, as described in the *Complaint*, Harding made the comment to everyone at the meeting. Nothing in the *Complaint* suggests that Harding directed the comment towards Boynton; Boynton indicates only that he was sitting across the table from Harding at the time. Boynton does not bother to plead why it is inappropriate for the President of the company to manage employees of the business. In fact, it is entirely appropriate for the President of the company to evaluate the work force and eliminate redundant positions or underperforming employees.

A "[p]laintiff should not be permitted to 'bootstrap her alleged discrete acts of discrimination and retaliation into a broader hostile work environment claim….[D]iscrete acts

6

constituting discrimination or retaliation claims... are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.'" *Mejia v. Roosevelt Island Med. Assocs.*, 927 N.Y.S.2d 817 (N.Y. Sup. Ct. 2011) (quoting *Khalil v. State of N.Y.*, 847 N.Y.S.2d 390, 396 (N.Y. Sup. Ct. 2007)).  As the court stated in *Mejia*, "[h]ostile work environment claims cannot be predicated on discrete employment decisions regarding assignments and promotions or on negative evaluations…. Rather, a claim for hostile work environment is 'a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation.'" *Id.* (quoting *Magadia v. Napolitano*, 2009 U.S. Dist. LEXIS 30926 (S.D.N.Y. Feb. 26, 2009)). Boynton has not alleged pervasive instances of ridicule, physical intimidation, or derogatory comments directed at him based on a protected characteristic, or that such comments interfered with his work performance.  In fact, in the *Complaint*, Boynton alleges multiple examples of comments regarding his stellar work performance and value to the company.  *Complaint* at ¶¶ 16, 17.

Because Boynton fails to sufficiently allege facts that, if true, would give rise to a reasonable inference of hostile work environment, the Court should dismiss Count III of Boynton's *Complaint*.

**B.  Count II Fails to State a Claim for Retaliation**

Boynton alleges he was subject to retaliation because he complained about a hostile work environment.  A plaintiff alleging retaliation in violation of the NYSHRL must show that (1) he or she engaged in a protected activity by opposing conduct prohibited thereunder; (2) the defendant was aware of that activity; (3) he or she suffered an adverse action based upon his or her activity; and (4) there was a causal connection between the protected activity and the adverse action.  *See Keceli v. Yonkers Racing Corp.*, 155 A.D.3d 1014, 1016 (N.Y. App. Div 2017).

7

Under the NYSHRL, an adverse employment action must generally constitute a "materially adverse change" in the terms and conditions of employment. *See Shapiro v. State of N.Y.*, 217 A.D.3d 700, 701 (N.Y. App. Div. 2023).

A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by "showing the protected activity was closely followed in time by the adverse [employment] action.[3] *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). In *La-Marca Pagano v. Dr. Steven Phillips, P.C.*, the court held that the plaintiff could establish a causal connection between the protected activity and adverse action because plaintiff was terminated one day after the defendant received a legal demand letter from her attorney protesting the discriminatory conduct that allegedly occurred at the defendant's office. The close temporal proximity between the plaintiff's protected activity and the adverse employment action was sufficient to demonstrate the necessary causal nexus. *La-Marca Pagano v. Dr. Steven Phillips, P.C.*, 129 A.D.3d 918, 921 (N.Y. App. Div. 2015). Conversely, in *Carr v. WestLB Admin., Inc.*, the court granted defendant's motion to dismiss the plaintiff's retaliation claim because the plaintiff failed to demonstrate a causal connection between the protected activity and adverse action where an intervening period of almost four months separated the activity and the action and developments during the period in question provided valid, non-discriminatory reasons for the adverse employment action. *Carr*, 171 F. Supp. 2d 302, 309-310 (S.D.N.Y. 2001).

Here, Boynton alleges that he complained to Turtz about the hostile work environment that Harding created via his sexist and misogynistic comments directed toward others and four

---

[3] Courts apply the same standard for retaliation claims under the NYSHRL as under Title VII. *See Herskowitz v. State of N.Y.*, 222 A.D.3d 587, 588 (N.Y. App. Div. 2023).

months later Morley terminated his employment. *Complaint* at 46. Boynton fails to establish a causal connection between his complaint to Turtz and his subsequent termination. First – Boynton does not allege that Harding terminated his employment; Morley did. *Id.* at 30. Boynton offers no facts demonstrating that Morley knew about Boynton's protected activity. At most, Boynton alleges that Turtz told him that he would talk to Morley about Boynton's complaints. *Id*. at 46. Boynton does not allege that Turtz actually spoke with Morley about his complaints. Boynton also does not allege that he complained about the hostile work environment to anyone other than Turtz. Boynton does not allege that he went to Human Resources or ever spoke directly with Morley regarding his complaints about Harding. He does not even allege that he followed up with Turtz to see if he spoke to Morley about the complaint. Without demonstrating that Morley knew that Boynton engaged in protected activity by complaining about Harding, Boynton cannot demonstrate that Morley terminated Boynton's employment because of it.

Because Boynton fails to sufficiently allege facts that, if true, would give rise to a reasonable inference of retaliation, the Court should dismiss Count II of Boynton's *Complaint*.

## C.  Count IV Fails to State a Claim for Fraud

Under New York Law, "where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." N.Y. CLS CPLR R 3016(b). "To plead a cause of action for fraud, a party must allege the elements of representation of a material existing fact, falsity, scienter, justifiable reliance and damages. In addition, each of these essential elements must be supported by factual allegations sufficient to satisfy the requirement of CPLR 3016(b) that the circumstances surrounding the fraud be pleaded in detail." *Bramex Assocs., Inc. v. CBI Agencies, Ltd.*, 149 A.D.2d 383, 384 (N.Y. App. Div. 1989).

Boynton fails to plead fraud with the requisite specificity.  First, he fails to plead justifiable reliance.  In the *Complaint*, Boynton states that, in 2023, Morley wanted Boynton to move aside for Cardarelli and Haverkate so he promised Boynton a "job for life" and gave him 9,750 A-1 Preferred shares.  *Complaint* at ¶64.  Despite his promises, Morley reduced Boynton's compensation over the next two years and terminated his employment in August 2025, which prevented the continued vesting of Boynton's preferred shares.  *Id.* at ¶¶ 65-66.

The purported basis of Boynton's fraud claim is his allegation that "Morley never intended to follow through with his promise," thereby "defrauding Boynton into accepting an age discriminatory demotion in exchange for continued employment and stock." *Complaint* at   70. However, Boynton does not plead any facts sufficient to demonstrate that his alleged reliance on Morley's statement that he had a "job for life" was justifiable.  Moreover, he does not allege that the forfeiture of his unvested shares following his termination was contrary to Lightpath policy or the law.

New York is at-will employment state.  If no written agreement exists between the employee and employer governing under what circumstances the employee can be fired, the employer has the right to fire the employee at any time for any reason.  *See Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 58 (N.Y. 2008).  "An at-will employee, who had been terminated, cannot state a fraudulent inducement claim on the basis of having relied upon the employer's promise not to terminate the contract, or upon any representations of future intentions as to the duration and security of his employment." *Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 167-168 (N.Y. App. Div. 2015).  Because Boynton's employment was terminable at any time he cannot, as a matter of law, establish justifiable reliance on Morley's statement that he would have a "job for life."

10

Boynton's fraud claim also fails because he does not allege a misrepresentation of present fact, but rather a promise of future performance.  The representation or omission upon which the fraud claim is predicated must relate to a past or existing fact, not a representation of what a party may have hoped or expected to occur in the future.  *See Chan v. Havemeyer Holdings LLC*, 223 A.D.3d 403 (N.Y. App. Div. 2024); *Albert Apartment Corp. v. Corbo Co.*, 182 A.D.2d 501 (N.Y. App. Div. 1992).  Statements of prediction or expectation about future events cannot give rise to a fraud or negligent misrepresentation claim.  *See Pacnet Network v. KDDI Corp.*, 901 N.Y.S.2d 908 (N.Y. Sup. Ct. 2009).  A promise of a "job for life" and preferred stock is not related to a past or existing fact but is inherently a promise of future performance.  Moreover, Morley *did* give Boynton the preferred shares; they were simply forfeited when his employment terminated.  *Complaint* at ¶¶ 32, 67.

Finally, Boynton does not plead fraud with the detail required by CPLR 3016(b). Boynton fails to allege specific facts with respect to the time, place, or manner in which Morley made the purported misrepresentation.  *See Riverbay Corp. v. Thyssenkrupp N. El. Corp.*, 116 A.D.3d 487, 488 (N.Y. App. Div. 2014).  In the *Complaint*, Boynton alleges that Morley gave most of his job duties to Cardarelli in August 2023.  *Complaint* at ¶¶ 24, 64.  However, Boynton does not provide detail about when Morley promised him a "job for life" and the preferred shares.  It is unclear in the *Complaint* whether the promise occurred before or after Boynton's job duties were given to Cardarelli.  Similarly, Boynton does not indicate where he and Morley were when Morley made the alleged misrepresentation (an important fact as Boynton lives in Florida, Lighpath is incorporated in New York, and Morley lives in Colorado), the method of communication Morley used to make the alleged misrepresentation, and whether any documentation exists that memorializes the promise of lifetime employment.  Boynton does not

11

plead with specificity whether Morley gave him the preferred shares to move aside for Cardarelli or for another reason, such as Morley's recognition of Boynton's value to Lightpath.  In fact, Boynton does not even plead the specific terms pursuant to which Morley granted Boynton the preferred shares, such as vesting schedules or forfeiture provisions.

Because Boynton fails to sufficiently allege facts that, if true, would give rise to a reasonable inference of fraud, the Court should dismiss Count IV of Boynton's *Complaint*.

## V.    CONCLUSION

For the reasons stated above, Lightpath, respectfully requests that the Court (1) dismiss Counts II, III and IV of Boynton's *Complaint*; and (2) award costs and such other relief to Lightpath as the Court deems appropriate.


Dated: April 27, 2026
New York, New York

Respectfully Submitted,


By:    /s/__Jon Uretsky_____
           Jon Uretsky
           PULLP
           Attorney for Defendant Cablevision Lightpath LLC
           111 Broadway, 8th Floor
           New York, New York 10006
           (212) 571-1255
           uretsky@pullup.com

           Michael J. Fortunato, Esquire
           Rachael Luken Carp, Esquire
           Rutu Patel, Esquire
           Rubin Fortunato & Harbison P.C.
           Attorney for Defendant Cablevision Lightpath LLC
           Awaiting pro hac vice
           1200 Liberty Ridge Drive, Suite 220
           Wayne, PA 19087
           (610) 408-2000
           RCarp@rubinfortunato.com

12

MFortunato@rubinfortunato.com
Rpatel@rubinfortunato.com

## DEFENDANT'S CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Jonathan C. Uretsky, an attorney duly admitted to practice before this Court, hereby certify that the foregoing Memorandum of Law in Support of Defendant Cablevision Lightpath, LLC's partial Motion to Dismiss ("Memorandum of Law") complies with the length limitations set forth in Local Rule 7.1 for the United States District Courts for the Southern and Eastern Districts of New York.

1. According to the word processing system used to prepare this document, Microsoft Word, the total word count for this Memorandum of Law is 4,184 words in its entirety.

2. This word count is within the 8,750-word limit mandated by Local Rule 7.1.


Dated: April 27, 2026
New York, New York

                    Respectfully Submitted,


By:     /s/ Jonathan Uretsky_____
        Jonathan C. Uretsky
        PULLP
        Attorney for Defendant Cablevision Lightpath LLC
        111 Broadway, 8th Floor
        New York, New York 10006
        (212) 571-1255
        uretsky@pullup.com


        Michael J. Fortunato, Esquire
        Rachael L. Carp, Esquire
        Rutu Patel, Esquire
        Rubin, Fortunato & Harbison PC
        Attorney for Defendant Cablevision Lightpath LLC
        Awaiting pro hac vice
        1200 Liberty Ridge Drive, Suite 220
        Wayne, PA 19087
        (610) 408-2000
        RCarp@rubinfortunato.com
        MFortunato@rubinfortunato.com
        rpatel@rubinfortunato.com


14